Freeman, J.,
delivered the opinion of the court.
This is an action brought by defendant in error to recover for certain goods delivered to the Nashville & Chattanooga Railroad Company at Nashville, to be forwarded to consignees at Knoxville, Tenn., which it is alleged were lost by reason of the negligence of the road, and were ruined and destroyed. The negligence specially alleged was failure to deliver goods in *262 good order to the East Tennessee & Georgia Railroad Co., to be transported to Knoxville.
The defendant pleaded not guilty and that it did not undertake as alleged in the declaration, and gave notice of special matters to be relied on under said pleas.
The notice stated the matter thus to be relied on as follows: The company “will rely on following defenses: first, it is not guilty; second, non assumpsit; and third, that the property sued for was destroyed or injured about the time alleged in the declaration by a freshet of unprecedented height, in the Tennessee River, and the loss was unavoidable, and by the act of God, without any negligence or default on the part of defendant."
These issues thus tendered present the points involved and to be decided by the jury with distinctness and accuracy.
The facts necessary to be noticed in this opinion are that the goods were received at Chattanooga about the 6th of March, 1867, and remained in possession of the railroad during the remarkable freshet of 1867, and were damaged by the water. The water it seems had risen so that it began to interfere with the railroad track on the 6th of March, and was at its highest on or about the 12th of March, reaching a height that submerged the track of the road, and perhaps the depot, some ten or twelve feet. The water seems to have risen, from the 6th for several days, at a rapid rate. All the roads coming in at Chattanooga were broken up, the town submerged, and when the *263 water subsided the track was covered with drift, in some places houses being left on the track by the flood. All the proof shows beyond question that such a flood had never occurred at this place within the memory of man, the old inhabitants who had witnessed other remarkable overflows since 1826, never having seen such a one as this, all agreeing that the water rose about fifteen feet, or near that, above what was known as the highest water-mark in previous freshets.
The proof further shows that a large amount of freight was in defendant’s charge at Chattanooga at the time and the road much pressed with business. "We need not go into a further detail of the facts, except to add that the proof shows that in the original location of the road and depot of the company, it was located on ground that was about three feet above what was known as high-water mark, as indicated by previous freshets.
The jury found a verdict for plaintiff, and defendant, after new trial being refused, prosecutes an appeal to this court in the nature of a writ of error.
Several objections are presented to the charge of the court, some of which we will proceed to notice.
The court charged the jury, “If you find that defendant used all the diligence which human sagacity could suggest in protecting plaintiff’s property, then you must find for the defendant,” and such is the general theory of the charge. This proposition involves the idea that the railroad company must have agents possessed of the maximum of human sagacity,
*264 and the limit of their diligence or efforts to save these goods must be “all which human sagacity could suggest.” This is the statement of a rule the requirements of which could seldom, if ever, be met in the transaction of business of this- character, for it would be • impossible that all the roads of the country should be able to command employees possessing the highest human sagacity, nor does the law make any such stringent and unreasonable demand upon them in order to shield them from liability in a case like the. present. The sounder rule is thus given by the Supreme Court of the United States: citing from 20 Pa., R., 171, in case of Railroad Co., v. Reeves, 10 Wall., 191, “ that when carriers discover themselves in peril by inevitable accident, the law requires of them ordinary care,, skill and foresight, which is the common prudence which men of business and heads of families usually exhibit in matters that are interesting to them.” While the rule is not very clearly expressed or defined by the above statement of it, nor very distinctly illustrated as far as we can see by the reference “ to the course of heads of families in matters interesting to them,” yet the principle intended to be stated is the true one; that is, that in case of accident or an emergency such as is presented in this case, a railroad company is bound to use such means as would suggest themselves to and be within the knowledge and capacity of well informed and competent business men in such positions, and such diligence as prudent, skillful men engaged in that kind of business might fairly be expected to use under like *265 circumstances, and that this diligence and these means should be actively used to protect and secure the property confided to their care. In other words, there should be no failure to use actively and energetically all the known and usual means which may fairly be expected to be found within the knowledge of men of average qualifications, engaged in a responsible business of this kind, where large amounts of property of the citizens pass through their hands, and are entrusted to their care.
This view of the principle is very well stated in Smith’s Leading Cases, vol. 1, part 1, p. 418, as follows: “As to paid agents, having possession of goods, the contract made and the duty undertaken by them, is to give skill and dilligence in the profession or business undertaken by them, and to know the extent of this, reference must be had to the particular profession or business in hand, and the extent of skill and ability ordinarily understood to be required by it. Insufficiency of means or skill and want of diligence, according, to the ordinary demands of the business, render the party, liable.” In fact we think the measure of diligence, skill and capacity in all such cases is readily deducible from the fair understanding of the nature of the contract of the carrier in such cases. The shipper delivers him the goods to be transported by a well known means from one point to another. The party is fairly understood to undertake that he will use all the known and usual means to comply with his contract, and impliedly engages that the agencies employed by him of every kind *266 shall be such ás are in ordinary use in such cases and of full average capacity and skill, if it be men or employees, usually found in like employments. The carrier can not be held fairly to engage to furnish the highest skill or capacity in a case like this, ■ because this is not readily found, nor is it contracted for or expected by the party who employs him. We hold therefore, that when his Honor said to the jury, that in order to shield the defendant from liability the diligence used (by which he evidently meant the means used) should be “all that human sagacity could suggest,” he laid down- the rule too strongly and erred.
His Honor instructed the jury on another point, in reference to the facts of the case, too strongly against the defendant, when he tells them: “If it was possible for defendant by any means to have been advised from points higher up the river that the river was still rising, and threatening an unprecedented rise, and .defendant failed to obtain or use all means to obtain the information, so that the goods were lost or damaged, it is liable.” Now, here is the same idea in this charge — no limitation at all upon the means to be used, but all means are to be used, and if any means not used by which possibly the information could have been obtained of an unprecedented, rise in the river, then the liability is fixed. In reference to the facts of this case, this was calculated to mislead the jury. How could the plaintiff in error be reasonably required to use all means to obtain information of an event about approaching in the shape *267 of a freshet, that all past experience in like matters had furnished no previous example, nor any reason on which the use of such means should be demanded? In other words, how could the company be held responsible for not anticipating, and preparing for that, which human sagacity, surrounded by the precise state of facts, and with a knowledge of the past history of rises in the river, which surrounded the party here, and with the facts known to defendant’s employees, could not have anticipated, unless we require in such ease a prescience, such as no human being can either claim or be responsible for not exercising? The true rule should have been stated to be, that if the parties had any reason, in the situation the company occupied, to anticipate that such a flood was about to occur, then it was the duty of the company to use actively and energetically all means at its command, or that might reasonably be expected of a company engaged in their business to possess, to meet the emergency, and save property confided to their care from injury, and any neglect to use the means, as stated above, which prudent, skillful men in that business might ordinarily be expected to use in such an emergency, would subject them to liability. Neglect is the ground of liability on the part of the carrier in such cases. He tells the jury again: “The fact that the defendant may have built its track, depot, warehouse, &c., above any previous known higb-water mark is not sufficient. It is bound to provide, or use all reasonable efforts to provide, against extraordinary emergencies, and the fact that the highest track, *268 cars and depot, was above all antecedent freshets and floods is not a valid excuse or release from responsibility in this case, unless it used all proper precaution and diligence in accordance with the principles herein charged.”
This charge, in connection with the previous part „ of the charge to which it refers, would require the same unlimited sagacity, and use of all human means, to anticipate such an extraordinary emergency as the flood occurring at this time, as is required with reference to the question of diligence as hereinbefore discussed, and is consequently erroneous. It might with equal propriety be required that the road should use all reasonable efforts to provide against a flood such as the Deluge in the days of Noah, for in this case there is at any rate one precedent to give warning, while in the other, as far as the proof goes, there was not even one case to indicate to them that such a freshet as the one under consideration might be expected to occur.
Without further criticising the charge of his Honor, it is enough to say, that the theory on which it goes is the use of diligence and means only limited by human capacity, while the . true rule only involves the use of such care, diligence and prudence (actively and energetically it is true) as competent and skillful men in such position might reasonably be expected to use, under the circumstances of the case, in the discharge of a responsible trust.
For these reasons the judgment must be reversed.